IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

HOPE HEDRICK,

    Plaintiff,

v.                                            CIVIL ACTION NO. 2:20-cv-00449

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Hope Hedrick ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on July 1, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's brief in support of her Social Security appeal (ECF No. 13) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 14).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

Claimant's request to reverse the Commissioner's decision (ECF No. 13), **GRANT** the Commissioner's request to affirm his decision (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

I. BACKGROUND

A. *Information about Claimant and Procedural History of Claim*

Claimant was 51 years old at the time of her alleged disability onset date and 53 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 263.)[1] Most recently, she worked as a cashier at a casino, and she has also been employed as a cashier at a diner, an assistant manager at a retail store and a pharmacy, and a restaurant server. (*Id.* at 269.) Claimant alleges that she became disabled on June 23, 2017, due to "Deteriorating Disc in Lower Back," "Sciatic Nerve Damage," "Bilateral Carpal Tunnel with Surgery," "Spasms in both hands, right worse," anxiety, depression, "Arthritis in both knees," "Rotator Cuff Arthritis both shoulders, right worse," and "Swelling in both feet." (*Id.* at 263, 267.)

Claimant filed her application for DIB benefits on July 12, 2017, and her SSI application on October 30, 2017. (*Id.* at 18, 234–45.) Her claims were initially denied on January 23, 2018, and again upon reconsideration on March 30, 2018. (*Id.* at 133–54, 157–70.) Thereafter, on April 30, 2018, Claimant filed a written request for hearing. (*Id.* at 171–76.) An administrative hearing was held before an ALJ on June 25, 2019, in Charleston, West Virginia, with the ALJ appearing from Tampa, Florida. (*Id.* at 36–64.) On July 23, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 14–35.) Claimant then sought review of the ALJ's decision by the Appeals Council on July 31, 2019. (*Id.* at 230–33.) The Appeals Council denied Claimant's request for review on May 15, 2020,

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 12.

and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on June 30, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 11) and a transcript of the administrative proceedings (ECF No. 12). Claimant subsequently filed her brief in support of her Social Security appeal (ECF No. 13), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 14). Claimant also filed a reply brief. (ECF No. 15.) As such, this matter is fully briefed and ready for resolution.

B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Mental Health Treatment During Relevant Period*

The administrative record does not include any treatment notes indicating that Claimant received specialized mental health treatment at any time. Her primary care physician prescribed an anti-depressant. (Tr. at 437.) At appointments with her primary care physician on March 15, April 13, May 11, and June 12, 2018, Claimant reported depression and anxiety symptoms, but the physician did not note any abnormal psychological findings or recommend further treatment. (*Id.* at 811–22, 1025–33.) On August 10, 2018, Claimant told him that she was "doing fair" with her prescribed anti-depressant, and again he did not note any abnormal psychological findings or recommend further treatment. (*Id.* at 1014–18.) The same was true at her appointment on October 5, 2018, even though Claimant reported "more trouble" with her anxiety "since her last

3

visit . . . due to holiday coming." (*Id.* at 1002–06.) She again told her primary care physician that her depression was "fair" on November 2, 2018. (*Id.* at 997.) At her next appointment on December 5, 2018, Claimant told him that she "want [sic] to see psyc [sic]," but he noted no abnormal psychological findings, and he did not refer her to anyone. (*Id.* at 988–92.) On January 8, 2019, Claimant reported that she was "doing fair" and that her anxiety "symptoms have improved somewhat." (*Id.* at 981.) She also related that she was "doing fair" on February 6 and March 6, 2019. (*Id.* at 965, 975.) She expressly denied depression symptoms at her May 6, 2019 appointment. (*Id.* at 954.)

    2. *Consultative Psychological Examination: Kara Gettman-Hughes, M.A.*

On January 8, 2018, Claimant underwent a consultative psychological examination with licensed psychologist Kara Gettman-Hughes, M.A. (*Id.* at 711–14.) The consultative examiner noted that Claimant "cited functional limitations, pain, and emotional distress as the primary reasons she is unable to maintain full-time employment." (*Id.* at 712.) She also noted that Claimant "reported a history of episodic depression" and "a tendency to worry excessively for several years." (*Id.*) Claimant told the consultative examiner that she "received marital counseling with her estranged husband" but "denied any other mental health treatment other than being prescribed medications by her family physician." (*Id.*)

Upon mental status examination, the consultative examiner observed that Claimant appeared "casually dressed with proper hygiene" and looked her stated age. (*Id.* at 713.) She "was cooperative during the evaluation" and had good eye contact. (*Id.*) Her speech "was responsive and coherent," and she was fully oriented. (*Id.*) The consultative examiner noted that Claimant's "mood was remarkable for sadness," and she had a labile affect. (*Id.*) Claimant's thought process was "generally understandable and connected,"

4

and her thought content revealed "no evidence of delusions, paranoia, obsessive thoughts, or compulsive behaviors" or "unusual perceptual experiences." (*Id.*) Her judgment was intact, but her insight was fair. (*Id.*) "There was no evidence of psychomotor agitation or retardation," and Claimant "denied suicidal and homicidal ideation." (*Id.*) Her immediate memory was intact, her recent memory "was mildly impaired," and her remote memory was fair. (*Id.*) She had "mildly impaired" concentration and persistence but normal pace. (*Id.*) The consultative examiner observed that Claimant's social functioning during the evaluation "was mildly impaired." (*Id.*)

She diagnosed Claimant with somatic pain disorder "because both psychological factors and a general medical condition are judged to play important roles in the onset, severity, and exacerbation of [her] pain complaints" based on Claimant's statement that "she is extremely frustrated by her levels of pain and resulting functional limitations, particularly her inability to work full time." (*Id.* at 713–14.) She also diagnosed Claimant with recurrent, moderate major depressive disorder based on Claimant's "report of experiencing episodes of major depression with intervals of at least 2 consecutive months, in which her mood has been relatively normal and the criteria were not met for major depression." (*Id.*) The consultative examiner also noted that Claimant reported that "for the past several months, she has consistently felt sad, guilty, and like a failure," in addition to impaired sleep, fatigue, loss of interest in activities, "cr[ying] easily," and feelings of helplessness and hopelessness. (*Id.* at 714.) Lastly, she diagnosed Claimant with generalized anxiety disorder "based on [her] report of excessive anxiety and worry occurring for more days than not for the past several years associated with a tendency to be easily frustrated and irritated," in addition to "restlessness, muscle tension, problems concentrating, impaired sleep, and fatigue." (*Id.*)

5

When describing Claimant's self-reported social functioning, the consultative examiner noted that Claimant reported "go[ing] to the store and run[ning] other errands twice a week" and "occasionally eat[ing] out" but not visiting family or friends, talking on the telephone, or going to the movies, the mall, or church. (*Id.*) She also noted that Claimant reported that she "can no longer exercise," colors as a hobby, and has no close friends. (*Id.*) Claimant told the consultative examiner that she keeps her medical appointments, manages her finances, has a checking account and pays her bills, and has a medical card and receives food stamps. (*Id.*) When describing Claimant's daily activities, the consultative examiner noted that Claimant told her she wakes up at six every morning and goes to bed at ten or eleven every night. (*Id.*) Claimant reported that she is able to perform activities of daily living and some housework, "although it takes an extended amount of time" and "she has to rest frequently." (*Id.*) She told the consultative examiner that she drinks coffee and smokes a cigarette when she wakes up. (*Id.*) She related that she works three days each week for a total of twenty-four hours per week and "after work she returns home and watches television." (*Id.*) She stated that when she does not work, "she tries to do housework with frequent rest breaks." (*Id.*) The consultative examiner noted that Claimant "appears capable of managing her funds." (*Id.*)

### C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential

evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive

7

presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's

"pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 19.) She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) She found that Claimant's degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees and bilateral shoulders, and obesity constituted "severe" impairments. (*Id.* at 20.) However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22–24.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work . . . except [she] can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, and crawl." (*Id.* at 24.) She further found that Claimant "cannot perform repetitive pushing, peddling, or stomping with the bilateral lower extremities" but "can perform frequent overhead reaching with the bilateral upper extremities." (*Id.*) In addition, the ALJ found that Claimant "must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, vibration, and workplace hazards such as moving machinery or unprotected heights." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was able to perform her past relevant work as a food server or assistant manager. (*Id.* at 28.) As a result, she concluded that Claimant was not "under a disability . . . from June 23, 2017, through the date of this decision." (*Id.*)

## II. LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by

substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ erred by failing to include mental functional limitations in her RFC assessment. (ECF No. 13 at 5–8.) She asks this Court to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 8.) The Commissioner responds that the ALJ properly determined that Claimant's mental impairments did not result in work-related functional limitations. (ECF No. 14 at 6–14.) Claimant replies that the Commissioner "distorts . . . Agency policy" by "conflat[ing] a finding of non-severity with a finding of no functional limitations." (ECF No. 15.)

"In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other

11

requirements of work.'" *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting 20 C.F.R. §§ 404.1545, 416.945). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Stated another way, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis deleted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

The ALJ in this case stated that the RFC assessment "is supported by the opinions of the State agency medical consultants, the opinions of the State agency psychological consultants, physical examinations, treatment records, radiological images, and the claimant's conservative treatment regimens." (Tr. at 27 (internal citations omitted).) Particular to Claimant's mental impairments, the ALJ explained that she found the opinions of the state-agency psychological consultants that Claimant had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing herself— with no corresponding recommended mental restrictions in their RFC assessments— "very persuasive" because the opinions were "adequately supported" and "consistent with the longitudinal record, including primary care provider notes, limited mental health treatment, and the consultative [psychological] examination." (*Id.*)

The ALJ had already further explained her reasoning for agreeing with the state-agency psychological consultants' opinions when evaluating the severity of Claimant's

12

mental impairments pursuant to the special psychiatric review technique at the second step of the sequential evaluation process. (*Id.* at 20–22.) She concluded that Claimant's mental impairments "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (*Id.* at 20.) Specifically, the ALJ found that Claimant had no more than mild limitations in the four areas of mental functioning comprising the "Paragraph B" criteria based on Claimant's own statements about her abilities, the consultative psychological examiner's findings, and various treatment notes. (*Id.* at 20–21.) The ALJ correctly acknowledged that her evaluation of the "Paragraph B" criteria is not equivalent to a mental RFC assessment. (*Id.* at 22.) SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

In other words, contrary to Claimant's assertion, mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. *Mascio*, 780 F.3d at 638 (explaining that claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]"); *see Hughes v. Astrue*, No. 1:09-cv-459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) ("[T]he ALJ's finding that [claimant's] panic disorder without agoraphobia and generalized anxiety were severe impairments at step two did not necessarily require the ALJ to include the limitations from such impairments in his analysis at step four."). This is true even if a job requires certain skills or is "socially intensive," as Claimant argues. (ECF No. 13 at 8; ECF No. 15 at 4–5.) A claimant's RFC represents "the most [she] can still do despite [her] limitations" in any work environment, regardless of the particular skills required. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

13

"[A]lthough some consideration [of the effects of the claimant's non-severe impairments] is required [in the RFC assessment], there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work." *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D.W. Va. Mar. 28, 2016) (citing 20 C.F.R. § 404.1545(a)(1); *Presnell v. Colvin*, No. 1:12-cv-299-FDW, 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013)). The ALJ's RFC assessment in this case demonstrates that she considered the potential work-related functional limitations associated with Claimant's mental impairments, and ultimately she effectively adopted the state-agency psychological consultants' opinions that Claimant's mild limitations in each of the four functional areas did not require mental RFC restrictions. (Tr. at 27.) "[T]he testimony of a non-examining physician [like a state-agency consultant] can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)). The ALJ explained that the state-agency psychological consultants' opinions were "consistent with the longitudinal record" in this case. (Tr. at 27.) Claimant does not challenge the ALJ's evaluation of their opinions. (ECF Nos. 13, 15.) As such, the undersigned **FINDS** that the ALJ did not err by not including mental restrictions in her RFC assessment.

### IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 13), **GRANT** the Commissioner's request to affirm his decision (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Copenhaver.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: May 21, 2021

Dwane L. Tinsley
United States Magistrate Judge